IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN GREEN, JR., 1160628,           ) | |
|     Petitioner,           ) | |
|                                        ) | |
| v.           ) | No. 3:06-CV-20-B |
|                                        ) | ECF |
| NATHANIEL QUARTERMAN,           ) | |
| Director TDCJ-CID,           ) | |
|     Respondent.           ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

Petitioner challenges his conviction for indecency with a child. *State v. Green*, No. F-0160059-SL (5th Crim. Dist. Ct., Dallas County, Tex., May 27, 2003). A jury found him guilty and assessed punishment at twenty years in prison. *Id*. His conviction was affirmed on appeal. *Green v. State*, No. 11-03-00159-CR (Tex. App. – Eastland, 2004) (unpublished). He did not file a petition for discretionary review.

Petitioner filed a state application for writ of habeas corpus. *Ex parte Green*, 63,178-01 (Tex. Crim. App. July 6, 2005). On November 16, 2005, the Court of Criminal Appeals denied the application without written order on the findings of the trial court.

On December 23, 2005, Petitioner filed this federal petition for writ of habeas corpus.

He argues:

(1) he received ineffective assistance of counsel; and

(2) he was denied due process when:

    (a)    he was improperly questioned without his counsel;

    (b)    a fraudulent statement was used against him;

    (c)    the state failed to properly enter Petitioner's written statement into the record;

    (d)    the state failed to timely turn over Petitioner's written statement to his attorney;

(3) he is actually innocent; and

(4) his written statement was not knowingly and voluntarily made.

On May 8, 2006, Respondent filed his answer. On May 19, 2006, Petitioner filed a reply. The Court now finds the petition should be denied.

## II.  Factual Background

The following factual background is taken from the opinion of the Eleventh District Court of Appeals.

> The indictment alleged that [Petitioner] committed indecency with a child by contact between his hand and the complainant's genitals. The complainant's grandmother, [Petitioner's] wife, testified at trial. She denied telling police and Claudia Rodriguez, a caseworker with Child Protective Services, that the complainant had told her that [Petitioner] had touched her on her vagina or on her private part, but she admitted telling them that the complainant said he touched her on her legs. Subsequently, Rodriguez was allowed to testify, over [Petitioner's] hearsay objection, that the complainant's grandmother told her and a police detective that the complainant had told her that appellant was "messing with her" and that "messing" meant touching on the private part. Rodriguez clarified that "private part" meant the vagina.
>
> . . . .

> The complainant testified that on the occasion in question appellant touched her on her private part. Appellant's wife, the complainant's grandmother, testified that the complainant told her that appellant had rubbed her leg. In a written statement that she gave to police, the grandmother stated that the complainant said that [Petitioner] was feeling "down between her legs." In a written statement, [Petitioner] stated that he touched the complainant on the leg but that he did not recall touching her and did not recall touching her private part. He said he made a bad mistake for which he was sorry. He blamed it on drinking and the devil. Rodriguez testified that the complainant told her that [Petitioner] had touched her on her vagina, her private part. As previously noted, she also indicated that appellant's wife, complainant's grandmother, had told her and the police detective that the complainant had indicated that [Petitioner] was messing with her, which meant that he was touching her on her private part, the vagina. [Petitioner] testified at trial, denying that he touched the complainant on her private part. He said he touched her on the knee.

*Green v. State*, No. 11-03-00159-CR, slip op. at 1-2.

### III. Discussion

**1.      Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996.  *See Lindh*, 521 U.S. at 336.  The petition in this case is subject to review under the AEDPA.

**2.      Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel because his counsel: (1) failed to explain the possible consequences of not accepting the state's plea offer; (2) advised Petitioner to sign an application for probation; and (3) failed to challenge the validity of Petitioner's initials on the *Miranda* warning card.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors."  *Crane v. Johnson*, 178 F.3d

309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### (a) Plea Offer

Petitioner argues his counsel was ineffective because he failed to adequately explain the possible consequences of not accepting the state's plea offer. He states his attorney failed to inform him that if he went to trial and was found guilty, his punishment range would be higher than the plea offer of seven years.

Petitioner's counsel submitted an affidavit on state habeas review. The affidavit states that counsel fully explained the plea bargain to Petitioner, and that Petitioner knowingly rejected the plea offer. *Ex parte Green*, No. 63,178-01 at 39. Further, the record shows that the trial court informed Petitioner that the punishment range was two to twenty years, and a $10,000 fine. Petitioner stated that he understood the punishment range. (Trial Tr. Vol. 2 at 2). The Court finds Petitioner's claim should be denied.

### (b) Probation

Petitioner argues his counsel was ineffective because he misled Petitioner regarding the likelihood of being sentenced to probation. He states that his counsel told him to sign an application for probation, and that the application was needed in the event he was found guilty. In his affidavit on state habeas review, defense counsel explained that if the jury believed Petitioner had not previously been convicted of a felony, they could sentence him to probation. (*Ex parte Green*, No. 63,178-01 at 39). Defense counsel states he explained this possibility to

Petitioner. (*Id*). The record also shows that the trial court instructed the jury on Petitioner's eligibility for probation. (Clerk's Record at 34). Further, under Texas law, Petitioner was required to sign a motion for probation prior to trial to be eligible to receive probation from the jury. TEX. CODE OF CRIM. PROC. Art. 42.12, sec. 4(e). Petitioner's claim should be denied.

### (c) *Miranda* Card

Petitioner argues his counsel was ineffective because counsel failed to challenge the validity of the *Miranda* warning card. He states he told his counsel that although the card contained his initials, he in fact never initialed the card. Petitioner's counsel, however, did cross-examine Officer Elton Fite regarding the *Miranda* warning card. (Trial Tr. Vol. 3 at 87-88). Defense counsel pointed out the difference between Petitioner's initials on the warning card and Petitioner's initials on his written statement. Counsel asked Officer Fite whether Fite actually placed Petitioner's initials on the warning card. Officer Fite denied placing Petitioner's initials on the card. (*Id*. at 88). Petitioner has not indicated what other action his counsel should have taken, or what further action would have revealed. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (finding a petitioner must specify what the investigation would have revealed and how it would have altered the outcome of the case). Petitioner's claim should be denied.

**3.    Due Process**

Petitioner argues he was denied due process when: (1) a Child Protective Services ("CPS") worker questioned him outside the presence of his attorney; (2) his statement to police was altered; (3) the state failed to timely turn the statement over to Petitioner's attorney; and (4) the state failed to properly enter the statement into evidence.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -6-

### (a) Questioning

Petitioner argues that his due process rights were violated when a CPS worker came to the jail to question him about the incident. He also states that a police officer accompanied the CPS worker. At the time that the CPS worker came to question Petitioner, Petitioner was represented by counsel, but counsel was not present.

The record reflects that CPS worker Claudia Rodriguez testified that during her investigation, she went to the jail to talk to Petitioner. (Trial Tr. Vol. 3 at 123). She stated that she went to the jail alone, and that no police officer was present when she talked to Petitioner. (*Id*. at 123-25). While at the jail, she told Petitioner that if he talked to her, she could share his statements with the police. (*Id*. at 123). Petitioner told her he did not want to talk to her, and he refused to speak to her. (*Id*. at 125, 128).

Petitioner's claim regarding his due process rights is unclear. To the extent that Petitioner claims his rights were violated when Ms. Rodriguez questioned him, Petitioner refused to speak to Ms. Rodriguez. Thus, no statements were admitted at trial. To the extent that Petitioner claims his refusal to speak to Ms. Rodriguez should not have been admitted at trial, his claim also fails.

As a general rule, "use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). This rule protects the implicit assurance given by the state, through *Miranda* warnings, that the defendant will not be penalized for exercising his right to remain silent. *Id*.; *United States v. Rodriguez*, 260 F.3d 416, 421 (5th Cir. 2001).

In this case, however, the testimony regarding Petitioner's refusal to speak to Rodriguez was not made for impeachment purposes. Rodriguez was not attempting to impeach Petitioner's testimony at trial, but was instead explaining her investigative process.

Further, Petitioner's claim of trial error is analyzed under a harmless error standard. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Under this analysis, a petitioner is entitled to federal habeas relief due to trial error only if such error "had substantial and injurious effect or influence in determining the . . . verdict." *Id*. Additionally, the petitioner must show the error actually prejudiced him. *Id*. at 637.

In this case, Petitioner has failed to show that the alleged trial error had a substantial or injurious effect or influence on the jury's verdict. His claim should therefore be denied.

**(b) Statement**

Petitioner made a written statement to the police. He argues that the written statement introduced at trial is different than the written statement he provided to police. The statement introduced at trial states in part: "I made a bad mistake (sic) one I will have to live with the rest of my life." (State's Trial Exhibit No. 2). Petitioner argues he did not write that statement. (Petition at 8A).

At trial, however, Petitioner admitted that the writing on the statement was his writing. (Trial Tr. Vol. 3 at 168). He also admitted that the statement contained his signature. (*Id*.). When defense counsel asked him what he meant in his statement about making a mistake, Petitioner stated that he was referring to putting a hand on the complainant's knee. (*Id*. at 166). On cross-examination, the prosecutor questioned Petitioner about the statement that he made a "bad mistake." Petitioner stated "We all make bad mistakes." (*Id*. at 170). Petitioner did not

dispute that he wrote the statement. (*Id*. at t 172). Petitioner's current claim that he did not write the statement is conclusory and should be denied. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("[A] court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court) unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

Petitioner also argues the state failed to timely provide defense counsel with a copy of the written statement. Petitioner states his counsel did not know about the statement until the time of trial. The record reflects that the trial court conducted a hearing two days before trial to determine the admissibility of Petitioner's written statement. (Trial Tr. Vol. 2 at 7). Petitioner's counsel was therefore aware of the statement prior to trial. Further, at trial, defense counsel did not object to the written statement being admitted into evidence. (Trial Tr. Vol. 3 at 83).

Finally, Petitioner argues the state failed to properly admit his statement into evidence. The record reflects, however, that the court admitted the statement and that the defense had no objection. (Trial Tr. Vol. 3 at 83). Petitioner's claim should be denied.

**4.    Actual Innocence**

Petitioner argues he is actually innocent because his statement was altered and was obtained in violation of his due process rights. As discussed above, Petitioner has failed to establish that his statement was altered or that it was obtained in violation of his due process rights.

Additionally, a claim of actual innocence independent of constitutional infirmity at trial is not cognizable on habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1988). Further, to be credible, a claim of actual innocence

must be based on reliable evidence *not* presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Thus, where a petitioner asserts his actual innocence of the crime, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup*, 513 U.S. at 327. Petitioner presents no new evidence in support of his claim. Petitioner's claim should be denied.

**5.     Statement**

Petitioner argues his written statement was not knowingly and voluntarily made because he was not read his *Miranda* rights and the statement was rewritten and altered by the investigator. As discussed above, Petitioner has made no showing that his statement was altered. Further, at trial Officer Fite testified that he read Petitioner his *Miranda* rights and that Petitioner placed his initial next to each paragraph to indicated that he understood. (Trial Tr. Vol. 3 at 74). The state also introduced the *Miranda* warning card with Petitioner's initials and signature. (State's Exhibit No. 1). Petitioner's claim is conclusory and should be denied.

**6.     Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 8th day of February, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

The United States District Clerk shall serve a copy of these findings and recommendations on the parties.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings and recommendations to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).